**Bobby HARDWICK,**
**Plaintiff-Appellant,**

v.

**Dr. Allen AULT, Commissioner, State Board of Offender Rehabilitation, et al., etc., Defendants-Appellees.**

**No. 75–1099**
**Summary Calendar.***

United States Court of Appeal,
Fifth Circuit.

Aug. 8, 1975.

Bobby Hardwick, pro se.

Arthur K. Bolton, Atty. Gen., Atlanta, Ga., for defendants-appellees.

Before WISDOM, BELL and CLARK, Circuit Judges.

WISDOM, Circuit Judge:

The plaintiff filed an action under 42 U.S.C. § 1983 seeking damages from named prison officials, alleging that they

---

* Rule 18, 5 Cir., see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5 Cir., 1970, 431 F.2d 409, Part I.

interfered with his right to receive newspapers, books, and writing materials sent him by a correspondent. This appeal comes before us from the action of the district court, dismissing the complaint without prejudice pending the plaintiff's exhaustion of state administrative remedies by submission of his grievance to a newly devised administrative procedure in the Georgia state prisons for processing inmate grievances. The district court took this action in compliance with an earlier order in this case entered September 18, 1974, by another panel of this Court. That panel has now withdrawn and vacated the order of September 18, 1974.

█ It is, of course, true that the federal courts have imposed upon federal prisoners the requirement that they "exhaust their administrative remedies in accordance with Bureau of Prisons policy". Jones v. Carlson, 5 Cir. 1974, 495 F.2d 209, 210. See also Paden v. United States, 5 Cir. 1970, 430 F.2d 882; Thompson v. Prison Industries, 5 Cir. 1974, 492 F.2d 1082. A federal prisoner typically brings his suit in mandamus. When he does, this Court has required that administrative remedies available within the prison system itself be exhausted before such actions will be entertained. See, e. g., Knight v. Henderson, 5 Cir. 1974, 500 F.2d 389.

The rule for state prisoners is different. The starting point for any discussion of the requirement of exhaustion of administrative remedies under 42 U.S.C. § 1983 is, of course, Monroe v. Pape, 1961, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492. There it was established that "the federal remedy is supplementary to the state remedy, and the latter need not to be first sought and refused before the federal one is invoked." 365 U.S. at 183, 81 S.Ct. at 482. A line of per curiam opinions of the Supreme Court followed and reinforced the nonexhaustion rule. In the area of administrative remedies generally, the most important of these was perhaps McNeese v. Board of Education, 1963, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622. There the

Court held that the exhaustion of administrative remedies was not a prerequisite to maintaining the suit, particularly when it appeared that the administrative remedy was not "sufficiently adequate". 373 U.S. at 674, 83 S.Ct. at 1437. But as Justice Harlan pointed out in his dissent, "There is nothing that leaves room for serious doubt as to the efficacy of the administrative remedy which Illinois has provided." 373 U.S. at 677, 83 S.Ct. at 1439.

With the advent of prisoner litigation challenging the conditions of confinement, the Court first faced the problem of exhaustion in the prisoner's rights area in Houghton v. Shafer, 1968, 392 U.S. 639, 88 S.Ct. 2119, 20 L.Ed.2d 1319. In Houghton, the state prisoner's § 1983 action was based upon the alleged deprivation of legal materials that he was using to prepare an appeal of his conviction. The Court noted that to require a prisoner to appeal the prison confiscation rules as applied to him to the state attorney general would be "futile". But the Court held: "In any event, resort to these remedies is unnecessary in light of our decisions in Monroe v. Pape . . . . ; and Damico v. California, 389 U.S. 416, 88 S.Ct. 526, 19 L.Ed.2d 647."

Later, in Wilwording v. Swenson, 1971, 404 U.S. 249, 92 S.Ct. 407, 30 L.Ed.2d 418, the Court made it clear that its holding in Houghton did not depend on the adequacy of the state administrative remedies. The Court explicitly stated that "state prisoners are not held to any stricter standard of exhaustion than other civil rights plaintiffs", and that "although the probable futility of such administrative appeals [in Houghton] was noted, we held that in 'any event, resort to these remedies is unnecessary.' " 404 U.S. at 251–52, 92 S.Ct. at 409.

In Steffel v. Thompson, 1974, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505, the Court made the unqualified statement: "When federal claims are premised on 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3)— as they are here—we have not required exhaustion of state judicial or administrative remedies, recognizing the para-

mount role Congress has assigned to the federal courts to protect constitutional rights".

In Preiser v. Rodriguez, 1973, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439, the Court drew a distinction between suits challenging the fact and duration of confinement and those challenging the conditions pertaining to confinement. It noted that the prisoners "could have sought and obtained fully effective relief through federal habeas corpus proceedings". 411 U.S. at 488, 93 S.Ct. at 1835. The Court held that prisoners seeking restoration of good time credits must exhaust adequate and available state remedies as 28 U.S.C. § 2254(b) provides. But, the Court cautioned, its holding extended only to prisoners who "sought no damages, but only equitable relief—restoration of their good time credits". "If a state prisoner is seeking damages, he is attacking something other than the fact or length of his confinement, and he is seeking something other than immediate or more speedy release—the traditional purpose of habeas corpus. In the case of a damage claim, habeas corpus is *not* an appropriate or available federal remedy." 411 U.S. at 494, 93 S.Ct. at 1838.

More recently, in Wolff v. McDonnell, 1974, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935, the Court reaffirmed the propriety of bringing actions other than those challenging the fact or duration of confinement under 42 U.S.C. § 1983: "The complaint in this case sought restoration of good-time credits, and the Court of Appeals correctly held this relief foreclosed under *Preiser*. But the complaint also sought damages; and *Preiser* expressly contemplated that claims properly brought under § 1983 could go forward while actual restoration of good-time credits is sought in state proceedings." At 554, 94 S.Ct. at 2974, 41 L.Ed.2d at 950. In a footnote, the Court noted that "one would anticipate that normal principles of res judicata would apply in such circumstances."

At 554, 94 S.Ct. at 2974, 41 L.Ed.2d at 950 n. 12.

 *Wolff,* taken together with *Wilwording* and *Houghton,* establishes that the plaintiff in a case such as the present one is challenging the conditions of his confinement, rather than its fact or duration. Accordingly, he may bring an action under 42 U.S.C. § 1983 without exhausting state administrative remedies, regardless of their adequacy. The Court of Appeals for the Fourth Circuit has recently reached the same conclusion:

> We keenly appreciate the force of the factors identified by the district court in *McCray* [McCray v. Burrell, D.C., 367 F.Supp. 1191] and *Washington* [Washington v. Boslow, D.C., 375 F.Supp. 1298] as supporting a policy determination that [the] exhaustion of available administrative remedies should be required of prisoners of correctional institutions in Maryland as a prerequisite to a suit under § 1983. We recognize the burden which the increasing flood of prisoner complaint litigation places upon the already overtaxed district courts as well as ourselves. Nevertheless, we are constrained to conclude that the holding that exhaustion is required may be reached only by either legislation conditioning resort to 42 U.S.C. § 1983 upon the exhaustion of available administrative remedies, or by the Supreme Court's re-examination and modification of its controlling adjudications on the subject. Congress has not enacted such legislation. The Supreme Court has not yet begun a re-examination of its previous holdings and we have no basis on which to predict that it will, or, if so, with what result. We think that we have no alternative but to hold that exhaustion may not be required.

McCray v. Burrell, 516 F.2d 357 (4 Cir. 1975) (en banc).[1]

---

1. The non-exhaustion rule has recently been reaffirmed by the United States Supreme Court. *See* Ellis v. Dyson, 421 U.S. 426, 95 S.Ct. 1691, 44 L.Ed.2d 214 (1975).

We, too, are aware of the burdens imposed upon the federal judicial system by the increasing volume of prisoner litigation. Although claims under 42 U.S.C. § 1983 may be brought in the state courts, the great bulk of the litigation has been in the federal courts. The federal courts, and particularly the district courts, must make every effort to devise procedural innovations that will readily separate meritorious claims from frivolous claims and that will encourage informal settlements of grievances while at the same time preserving the plaintiffs' rights under 42 U.S.C. § 1983. The problems are particularly vexing because generally speaking no right to counsel exists in § 1983 cases, and the pleadings are drawn in the first instance by plaintiffs unlearned in the law. Some courts have appointed counsel who have indicated their willingness to accept such appointments to represent plaintiffs in § 1983 cases that appear to raise particularly meritorious claims. Others, such as the United States District Court for the Eastern District of Pennsylvania, have experimented with appointing third-year law students working under faculty supervision to aid prisoners in prosecuting their claims under § 1983. The Federal Judicial Center has appointed a special committee under the chairmanship of Judge Ruggero J. Aldisert of the Third Circuit, with Professor Frank J. Remington as reporter, to study the handling of prisoners' civil rights cases and to propose procedures for more efficient processing of those cases.[2] The important work of this committee is still in progress, but we have had the benefit of studying a preliminary draft of its report and recommendations. One of the developments the report takes note of is especially relevant to the present case. We must caution, however, that the report is tentative only and does not bear the imprimatur of the committee or of the Judicial Center. The tentative draft notes that District Judge Vincent Biunno

has devised a "special report" for use in conjunction with § 1983 litigation before his court in cases which "appear to have significance beyond the individual prisoner who brings the action". The draft points out that Judge Biunno determines the significant questions raised by the complaint and enters an order directing the state attorney general to furnish information regarding those questions to the court. It is not clear how this "special report" procedure interacts with the more familiar processes of pre-trial practice under the Federal Rules of Civil Procedure which ordinarily would govern § 1983 cases. To the extent that requiring such "special reports" does not divest the § 1983 plaintiff of any of the rights he enjoys under the Federal Rules of Civil Procedure and the non-exhaustion doctrine, it would appear to be a worthwhile innovation. Such "special reports" should not be devised as functional equivalents of the exhaustion of administrative remedies. Rather, if utilized, they should serve the useful functions of notifying the responsible state officials of the precise nature of the prisoner's grievance and encouraging informal settlement of it, or, at the least, of encouraging them to give the matter their immediate attention so that the case may expeditiously be shaped for adjudication. It is, of course, in the sound discretion of the district court whether special measures such as that devised by Judge Biunno are appropriate to the particular § 1983 claim before it. The facts here suggest that this may be such a case, and we encourage the district court to consider the possibility on remand.

We vacate the order of the district court dismissing without prejudice the plaintiff's complaint for failure to exhaust state administrative remedies, and we remand the cause for further proceedings in light of the authorities cited herein.

Vacated and remanded.

---

**2.** The other members of the committee are Honorable Griffin B. Bell of the Fifth Circuit, Honorable Robert C. Beloni of the District of Oregon, Honorable Robert J. Kelleher of the Central District of California, and Honorable Frank J. McGarr of the Northern District of Illinois. The reporter for the committee is Professor Frank J. Remington of the University of Wisconsin Law School.