[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

————————————————

No. 23-13338

Non-Argument Calendar

————————————————

JOHN ANDREW KISTER,

                                        Plaintiff-Appellant,

*versus*

MICHAEL BOROWICZ,
Dr., in his individual and official capacity,
WEXFORD HEALTH SOURCES, INC.,
G. ANTHONY,
Mr., in his individual and official capacity,
DR. BANERGEE,
in his individual and official capacity,
JAMES PRESCOTT,
in his individual and official capacity,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Alabama
D.C. Docket No. 2:20-cv-00253-WKW-SMD

_____

Before JORDAN, JILL PRYOR, and KIDD, Circuit Judges.

PER CURIAM:

John Kister, an Alabama inmate, filed a civil complaint alleging that prison medical providers acted deliberately indifferent when addressing and treating his medical needs. The district court granted summary judgment in favor of the prison officials, based on special reports they filed in response to Kister's complaint. Kister now appeals, arguing that the district court employed an erroneous summary judgment procedure and erred in evaluating the merits of his claims. After careful consideration, we vacate the district court's judgment and remand for further proceedings.

## I. BACKGROUND

Kister, an Alabama prisoner previously housed at Staton and Elmore Correctional Facilities, suffers from diagnosed physical and mental health conditions. In April 2020, Kister, proceeding *pro se*, filed the operative amended complaint, alleging violations of 42 U.S.C. § 1983 and naming the following seven parties in both

their individual and official capacities: (1) Dr. Michael Borowicz; (2) Wexford Health Sources, Inc. ("Wexford"), the contracted medical provider for the Alabama Department of Corrections; (3) Guillaume Anthony, a Licensed Practical Nurse ("LPN") and ombudsman; (4) Darryl Ellis, a Registered Nurse ("RN"); (5) Dr. Sreelekha Banerjee; (6) James Prescott, the mental health programs director for the facilities; and (7) Evelyn Benton, an LPN (collectively, the "Defendants").

Kister alleged that he experienced constant nerve pain, but, due to Wexford's policies, the Defendants would not prescribe him sufficient narcotic medication to address this condition. He also contended that his severe nerve pain required him to limit his antipsychotic medication, and the Defendants failed to provide him consistent counseling, both of which exacerbated his mental health concerns.

The Defendants filed two special reports denying the claims against them. They also provided affidavits testifying to Kister's medical treatment while incarcerated and copies of Kister's prison medical records.

In June 2020, a magistrate judge ordered Kister to respond to the special reports and explained that the court would "at some time in the future . . . treat" these filings as dispositive. The magistrate judge directed Kister to file sworn affidavits or other evidentiary materials and consult Federal Rule of Civil Procedure 56 when drafting his response. The magistrate judge also cautioned Kister that failure to provide evidence to support his allegations

"may result in th[e] court accepting Defendants' evidence as the truth," and, unless either party objected within 10 days of the issuance of the order, "the court may at any time . . . and without further notice . . . (1) treat the special reports and any supporting evidentiary materials as a motion for summary judgment and (2) after considering any response . . . rule on the motion for summary judgment in accordance with the law." Neither party objected.

The parties then engaged in approximately a year of briefing, discovery, and motions litigation before Kister's case went dormant for two years.

In August 2023, the magistrate judge issued a report and recommendation ("R&R"), which recommended granting summary judgment to the Defendants based on the special reports. The magistrate judge first found that Eleventh Amendment immunity barred Kister's official-capacity claims against the Defendants, a finding Kister does not challenge on appeal. The magistrate judge also determined that Kister's individual-capacity claims against the Defendants failed, because the record did not show that the "Defendants 'acted with more than gross negligence,'" but rather that Kister wished for alternative medical treatment, which was not sufficient to show a constitutional violation. The magistrate judge likewise concluded that, to the extent Kister sought to hold any of the Defendants individually liable by virtue of their supervisory positions, those claims failed because nothing indicated that the Defendants (1) acted deliberately indifferent to [Kister's] medical needs, (2) "w[ere] aware of any wide-spread abuse in medical

services," (3) "proffered a custom or policy resulting in deliberate indifference," or (4) "knew their subordinates acted unlawfully."

The magistrate judge then informed the parties that they had until August 28, 2023—14 days from the issuance of the R&R—to file objections. Quoting Eleventh Circuit Rule 3-1, the magistrate judge warned that the failure to file objections would "'waive the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions' except upon grounds of plain error if necessary in the interests of justice." Neither party objected, so the district judge adopted the R&R and entered judgment in favor of the Defendants.

Kister timely filed a notice of appeal and explained that his prison's lack of paper and envelopes prevented him from objecting to the R&R, but he wished to appeal the district court's order under the plain error standard to "prevent manifest injustice." After this case was fully briefed on appeal, Kister, now counseled, filed a letter of supplemental authority, noticing our recent precedential decisions in *Chapman v. Dunn*, 129 F.4th 1307 (11th Cir. 2025) and *Horton v. Gilchrist*, 128 F.4th 1221 (11th Cir. 2025).

## II. STANDARD OF REVIEW

We review a district court's grant of summary judgment *de novo*. *Stalley v. Cumbie*, 124 F.4th 1273, 1282 (11th Cir. 2024). "We review a district court's management of its docket for abuse of discretion." *Chapman*, 129 F.4th at 1318.

However, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and

recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions" so long as "the party was informed of the time period for objecting and the consequences on appeal for failing to object." 11th Cir. R. 3-1.

Nonetheless, even "[i]n absence of a proper objection," we may review for plain error on appeal "if necessary in the interests of justice." *Id.* "Under the civil plain error standard, we will consider an issue not raised in the district court if it involves a pure question of law, and if refusal to consider it would result in a miscarriage of justice." *Roy v. Ivy*, 53 F.4th 1338, 1351 (11th Cir. 2022) (quotation marks omitted).

## III. DISCUSSION

### *A. We do not need to consider whether Kister waived appellate review of the district court's order by failing to object to the magistrate judge's R&R*

Kister concedes that he failed to object both to the magistrate judge's order directing him to respond to the special reports and to the R&R. Because Kister was advised of his right to file the objections and consequences for failing to do so, his actions would ordinarily result in the waiver of his right to challenge the conclusions relied upon by the district court in granting summary judgment to the Defendants. *See* 11th Cir. R. 3-1; *Roy*, 53 F.4th at 1351.

Nevertheless, Kister requests that we treat his issues for appeal as preserved because (1) a lack of prison resources, rather than

his own conduct, led to his inability to timely object to the R&R, (2) his notice of appeal can be liberally construed as his R&R objections, and (3) his challenge to the district court's summary-judgment procedure presents a "pure" legal question.

As noted above, we ordinarily "will not consider an issue or theory that was not raised in the district court," *Wright v. Hanna Steel Corp.*, 270 F.3d 1336, 1342 (11th Cir. 2001), and a party generally waives the ability to challenge a magistrate judge's findings on appeal when it fails to object to an R&R, 11th Cir. R 3-1. On this point, we note that Kister is a well-versed federal court litigant and has timely filed R&R objections when previously required in both the instant case and in his recent district court cases even though he was proceeding *pro se*. *See, e.g.*, *Kister v. Wynn*, No. 2:21-cv-00222 (M.D. Ala. Dec. 27, 2023); *Kister v. Wilson*, No. 2:22-cv-00413 (N.D. Ala. Aug. 31, 2023); *Kister v. Dawson*, No. 5:20-cv-00871 (N.D. Ala. Mar. 23, 2022).

But we need not consider the timing of Kister's objections at this stage because, as more fully detailed below, errors in the district court's procedure and substantive analysis require us to vacate the court's final judgment and remand for further proceedings. This is a case where there is plain error and the interests of justice warrant review. *See* 11th Cir. Rule 3-1.

*B. The district court abused its discretion by failing to provide Kister with adequate notice and an opportunity to respond before entering summary judgment against him*

Kister asserts that remand is appropriate because the district court erroneously used the Defendants' special reports as a vehicle essentially to *sua sponte* grant summary judgment. We initially note that, although Kister contends *de novo* review applies to this issue, we review the district court's administration of its docket for an abuse of discretion. *Chapman*, 129 F.4th at 1318. Nonetheless, we conclude that plain error occurred.

Federal Rule of Civil Procedure 56(f) permits "a district court to enter summary judgment 'on its own' after identifying 'material facts that may not be genuinely in dispute' – but only after 'giving notice and a reasonable time to respond.'" *Id.* (quoting Fed. R. Civ. P. 56(f)). "[S]ummary judgment should be granted *sua sponte* only in those circumstances in which the dismissed claims have been fully developed in the evidentiary record and the non-moving party has received adequate notice." *Id.* (alteration in original). In these circumstances, district courts "should be particularly careful to ensure" a *pro se* litigant receives the proper notice "so that any rights that such a litigant might have will not be extinguished merely through failure to appreciate the subtleties of modern motions practice." *Smith v. Sch. Bd. of Orange Cnty*, 487 F.3d 1361, 1368 (11th Cir. 2007) (quoting *Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir. 1985).

"[D]istrict courts in this Circuit have required special reports in *pro se* prisoner litigation for decades." *Horton*, 128 F.4th at 1226

23-13338                Opinion of the Court                9

(rejecting plaintiff's argument that the special-report procedure should afford him the opportunity to *sua sponte* amend his complaint). Indeed, the former Fifth Circuit recognized "the burdens imposed upon the federal judicial system by the increasing volume of prisoner litigation" and opined that so long as the special-report process "does not divest [a section] 1983 plaintiff of any rights he enjoys under the Federal Rules of Civil Procedure . . . [special reports] . . . appear[ed] to be a worthwhile innovation." *Hardwick v. Ault*, 517 F.2d 295, 298 (5th Cir. 1975).

Yet, the process presents challenges, particularly for *pro se* litigants, and we have not "explicitly endorsed the practice in the over forty years that we have existed as a court." *Horton*, 128 F.4th at 1227 (Wilson, J., dissenting) (noting *Hardwick* is "[t]he only case that approves the use of special reports"). Although "the use of special reports is common practice in Alabama," and we recognize "the need for district courts to manage their dockets and address cases promptly, the use of special reports removes a consequential part of litigation—discovery—from" *pro se* prisoners "who are trying to navigate a system without help from a lawyer." *Id.* at 1227–28.

On appeal, Kister argues that the district court's informal special-report process is unlawful because it is (1) not governed by any applicable rules, (2) "ignores" the adversarial nature of the judicial system, and (3) violates due process. He asserts that the district court's local rules do not govern the special-report procedure, and the wording of the magistrate judge's order did not allow him to "receive adequate notice of the procedural stakes" associated

with the process. Kister also contends this "*ad hoc* local practice" is harmful to *pro se* litigants, as it acts to "collect information and expediently terminate . . . litigation," which "negate[s] the adversarial process" and "deprives vulnerable plaintiffs of [a] meaningful chance to respond."

Our recent decision in *Chapman* is instructive. The plaintiff, like Kister, was an Alabama inmate who sued prison officials for deliberate medical indifference, and the defendants filed special reports denying the claims. *Chapman*, 129 F.4th at 1311–12. A magistrate judge ordered the plaintiff to respond and warned that the court would "'at some time in the future'" treat the parties' filings "'as a dispositive motion and response' for summary-judgment purposes." *Id.* at 1312, 1318. Two years of discovery ensued, and, before waiting for all of the plaintiffs' filings or providing any further notice, the magistrate judge recommended granting summary judgment to the defendants, a recommendation the district judge adopted. *Id.* at 1312–13.

We held that the district court abused its discretion, because "14 days was[] [not] a reasonable time for [the plaintiff] to object to the [R&R], and accordingly, . . . [he] did[] [not] receive an adequate opportunity to develop the record in this fact-intensive dispute." *Id.* at 1319 (quotation marks and citations omitted). We reasoned that "[t]he parties had been going back and forth in discovery for more than two years between" the issuance of the magistrate judge's procedural notice and the R&R, without the plaintiff being provided "any further notice" of the court's intention to enter

summary judgment. *Id.* We also noted that, at the time the magistrate judge issued the R&R, not all of the plaintiff's responses to the defendants' evidence had been docketed, and as an incarcerated *pro se* litigant, the plaintiff "depended on the prison's mail system to receive and submit filings" which "had already produced delays." *Id.*

A member of this panel concurred in *Chapman* but wrote separately to express his "concerns about the use of the special report process." *Id.* at 1320 (Jordan, J., concurring). Specifically, he noted that the special-report process is neither "mentioned in, much less authorized by, the Federal Rules of Civil Procedure," *id.* at 1322, nor codified by local rules of any Alabama district courts, *id.* at 1323 & n.2. He further stated special reports "simultaneously serve as a one-stop-shop for the defendants' informal answer to the complaint, provision of discovery, and summary judgment briefing on the merits." *Id.* at 1323. He elaborated that the facts of *Chapman* "show[] how the special report process turns the traditional model of adversarial civil litigation on its head. And it tells a cautionary tale of how defendants can use the process to provide only the documents and information they have cherry-picked while withholding relevant discovery." *Id.*

Here, the district court's use of the special-report procedure did not afford Kister with adequate notice and an opportunity to respond before summary judgment was entered against him. Granted, in the June 2020 order directing Kister to respond to the special reports, the magistrate judge advised him of the court's

intention to treat the filings as dispositive motions, informed Kister of Rule 56, and warned that failure to file evidence in support of his allegations would result in the Defendants' filings being treated "as the truth." Kister failed to object to this order, and he also filed several responses to the special reports referencing his opposition to summary judgment being granted to the Defendants.

However, over three years elapsed between the magistrate judge's June 2020 order and the issuance of the R&R in August 2023, and Kister's case was inactive for two of those years. Beyond the June 2020 order, which indicated that the court "may" treat the Defendants' special reports as dispositive motions for summary judgment "at some time in the future . . . without further notice," Kister did not receive any additional communication from the court on this issue, and was given only 14 days to object to the R&R. *See Chapman*, 129 F.4th at 1318–19.

Accordingly, we find that the district court abused its discretion and committed plain error in this case. Under *Chapman,* the district court did not provide Kister with sufficient notice prior to construing the Defendants' special reports as motions for summary judgment, and the court did not permit Kister, a *pro-se* inmate, enough time to respond to the magistrate judge's R&R before entering final judgment against him. *See id*.; *see also Johnson v. United States,* 520 U.S. 461, 468 (1997) (holding that "it is enough that an error be 'plain' at the time of appellate consideration"). As such, we vacate and remand the district court's judgment granting summary judgment to the Defendants. On remand, the district court

shall permit Kister the opportunity to object to the R&R, at which time he may challenge both the court's special-report procedure and the substantive analysis of his claims.

### C. The district court erred by using the incorrect legal standard to evaluate Kister's deliberate-indifference claims

Kister also challenges several aspects of the district court's analysis of his deliberate-indifference claims. He primarily requests, however, that we remand his case because the district court employed a legal standard inconsistent with our recent decision in *Wade v. McDade*, 106 F.4th 1251 (11th Cir. 2024) (en banc).

"To prevail on a claim of deliberate indifference, [a] plaintiff[] must satisfy both an objective and subjective inquiry, and must establish a necessary causal link between the challenged conduct and [his] injuries." *Stalley*, 124 F.4th at 1283 (quotation marks and citations omitted). As to the objective inquiry, a plaintiff must show "that he suffered a deprivation that was objectively, sufficiently serious." *Wade*, 106 F.4th at 1262 (quotation marks omitted).

At the time of final judgment in Kister's case, some cases in the Eleventh Circuit employed the "more than gross negligence" standard when undertaking the subjective inquiry of the deliberate-indifference analysis. *See, e.g., Hoffer v. Sec'y Fla. Dep't of Corr.*, 973 F.3d 1263, 1270 (11th Cir. 2020) (quotation marks omitted). *But see, e.g., Keohane v. Fla. Dept of* Corrections, 952 F.3d 1257, 1266, 1277 (11th Cir. 2020) (using a "more than mere negligence" standard). Sitting en banc, we recently clarified that a plaintiff instead must show that a defendant "acted with 'subjective recklessness as used

in the criminal law,'" or, in other words, a defendant must be "actually, subjectively aware that his own conduct caused a substantial risk of serious harm to the plaintiff." *Wade*, 106 F.4th at 1262 (quoting *Farmer v. Brennan*, 511 U.S. 825, 839 (1994)). However, a defendant "'cannot be found liable under the Cruel and Unusual Punishments Clause' if he 'responded reasonably to the risk.'" *Id.* (quoting *Farmer*, 511 U.S. at 844–45).

Here, the district court issued its final judgment before we decided *Wade*, resulting in an erroneous resolution of Kister's deliberate-indifference claims that requires us to vacate and remand. *See Chapman*, 129 F.4th at 1317. The court adopted the magistrate judge's primary conclusion that, because the record did not show that the Defendants acted with "more than gross negligence," no constitutional violation existed, and Kister therefore could not succeed on individual-capacity claims against any Defendants directly involved in his medical care or holding supervisory prison positions. *See Stalley*, 124 F.4th at 1288 (A "plaintiff[] cannot maintain a supervisory liability claim tied to an alleged underlying constitutional violation if it is determined that no such violation occurred.").

Because the district court utilized a now-defunct legal standard, it committed an error that is now "plain." *See Johnson*, 520 U.S. at 468. We vacate the district court's judgment made in the Defendants' favor and remand so the court may re-evaluate Kister's deliberate-indifference claims in light of *Wade*.

## IV. CONCLUSION

For the reasons stated above, we **VACATE** the district court's judgment in favor of the Defendants and **REMAND** for the court to provide Kister the opportunity to object to the R&R and for reconsideration of Kister's claims in light of *Wade*.